**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| ALICE ESTLE, | : | Case No. 3:11-cv-149 |
| Plaintiff, | | District Judge Walter H. Rice |
| | | Magistrate Judge Michael J. Newman |
| vs. | : | |
| MICHAEL ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | | |
| Defendant. | : | |

---

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THE CASE BE REMANDED FOR AN IMMEDIATE AWARD OF DISABILITY INSURANCE BENEFITS AND/OR SUPPLEMENTAL SECURITY INCOME BENEFITS WITH AN ONSET DATE OF OCTOBER 3, 2003; AND (3) THIS CASE BE CLOSED**

---

This is a Social Security disability benefits appeal brought pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). At issue is whether the Administrative Law Judge ("ALJ") erred in finding that Plaintiff Alice Estle ("Plaintiff") was "not disabled" and therefore unentitled to Disability Insurance Benefits ("DIB") and/or Supplemental Security Income ("SSI").

The case is before the Court on Plaintiff's Statement of Errors (doc. 9), the Commissioner's Memorandum in Opposition (doc. 10), Plaintiff's Reply (doc. 11), and administrative record (doc. 8).

---

[1] Attached hereto is a NOTICE to parties regarding objections to this Report and Recommendation.

# I. BACKGROUND

## A.      Procedural History

Plaintiff filed her applications for DIB and SSI on September 15, 2006.  Doc. 8-5 at PageID 162-70.  In both applications, Plaintiff asserts she has been under a "disability" since October 3, 2003.  *See id.*

Following initial administrative denials of Plaintiff's applications, Plaintiff received a hearing before ALJ Thomas McNichols, II.  *See* doc. 8-2 at PageID 77-115.  At the hearing, the ALJ heard testimony from Plaintiff and a vocational expert, Mark Pinti.  *Id.*

On December 17, 2009, the ALJ issued a written decision, concluding that Plaintiff was not under a disability at any time from October 3, 2003, the alleged onset date, through the date of his decision, and therefore, was ineligible to receive DIB and/or SSI.  *Id.* at PageID 70.

Specifically, the ALJ's "Findings," which represent the rationale of his decision, were as follows:

1.      The claimant meets the insured status requirements of the Social Security Act through March 31, 2005.

2.      The claimant has not engaged in substantial gainful activity since October 3, 2003, the alleged disability onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

3.      The claimant has the following severe impairments: 1) headaches; 2) stress disorder (anxiety); 3) borderline intellectual functioning; and 4) history of depression (20 CFR 404.1520(c) and 416.920(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) with the following restrictions: 1) no climbing of ropes, ladders or scaffolds; 2) no exposure

to hazards; 3) no exposure to the general public; 4) no complex or detailed instructions; 5) only low stress jobs with no production quotas and no over-the-shoulder supervision; 6) simple one- or two-step tasks requiring little, if any, concentration; 7) no teamwork; and 8) no reading.

6. According to the unrebutted testimony of the vocational expert, the claimant is capable of performing past relevant work as a packager and dishwasher. This work does not require the performance of work-related activities precluded by the claimant's residual functioning capacity (20 CFR 404.1565 and 416.965). Thus she is not disabled.

7. In addition and in the alternative, the claimant can do other work that exists in significant numbers in the national economy. The claimant was born on June 20, 1954, and alleges a disability onset date of October 3, 2003. At the time of the hearing for purposes of Social Security Act, the claimant is classified as of "advanced age."

8. The claimant has not been under a disability, as defined in the Social Security Act, from October 3, 2003, through the date of this decision (20 CFR 404.1520 (e) and (f) and 416.920 (e) and (f)).

*Id.* at PageID 61-70

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. *Id.* at PageID 50-52; *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Plaintiff timely filed this appeal on May 6, 2011. *See* doc. 1.

**B.     Plaintiff's Vocational Profile and Testimony**

Plaintiff was 49 years old on her alleged disability onset date and thus considered a "younger person"; at the time of the hearing, Plaintiff was 55 years old, and thus a "person of advanced age." Doc. 8-2 at PageID 80; 20 C.F.R. §§ 404.1563, 416.963. Plaintiff completed the twelfth grade in a special education program. Doc. 8-6 at PageID 188. Her high school report

card shows that, at the age of 13, Plaintiff had IQ scores of 62, 65, and 69 based on the Wechsler Intelligence Scale for Children.[2] *Id.* at PageID 237.

Plaintiff has past relevant work as a packager and a dishwasher. Doc. 8-2 at PageID 110. She has not worked since the alleged onset date. Doc. 8-6 at PageID 184.

At the administrative hearing, Plaintiff testified that she has very weak reading skills, and is not able to read the newspaper. Doc. 8-2 at PageID 83-84. She claimed that she passed her driver's license test only because it was read to her. *Id.*

In 2003, Plaintiff was hit by car while a pedestrian. *Id.* at PageID 96-97. Following that accident, she began experiencing pain and weakness in her arms and legs, and shaky hands. *Id.* at PageID 85-88, 96-97. Plaintiff testified that she feels pain in her legs and arms every day and, on a ten-point pain scale, sometimes the pain is a five and other times a ten. *Id.* at PageID 94-96. Plaintiff estimated that, due to her leg pain, she can walk four blocks at a time; stand for one hour at a time; and sit for five hours at a time. *Id.* at PageID 98. She estimated that she can lift no more than five to eight pounds. *Id.* at PageID 99.

Plaintiff also testified that she continually suffers from migraines seven days a week. *Id.* at PageID 88-89.

Moreover, Plaintiff testified that she suffers from anxiety. *Id.* at PageID 90. She stays away from people, including her husband and granddaughter. *Id.* at PageID 90, 102. She reportedly stays in her bedroom most of the time. *Id.* When Plaintiff does go out in public, she testified, she "wanders off." *Id.* at PageID 100, 102.

---

[2] The Wechsler Intelligence Scale for Children (WISC) is an intelligence test for children between the ages of 6 and 16 that generates an I.Q. score. *See Dragon v. Comm'r of Soc. Sec.*, No. 1:08-cv-389, 2009 WL 3126269, at *5 n.4 (S.D. Ohio June 30, 2009). To meet Listing 12.05(C), a claimant's IQ score must be between 60 and 70. *See* 20 C.F.R., Pt. 404, Subpt. P, App.1, § 12.05(C); *see also Brown v. Sec'y of Health & Human Servs.*, 948 F.2d 268, 269-70 (1991) (noting that IQ scores ranging from 60 through 70 qualify an individual as mentally retarded under Social Security regulations).

As for activities, Plaintiff testified that her husband does the shopping, cooking and housework, and she does not have any hobbies.  *Id.* at PageID 101-02.  She testified that she does not have any friends, but her brother visits her.  *Id.* at PageID 102-03.

Plaintiff testified that she takes medication for depression.  *Id.* at PageID 94.  She has suicidal thoughts, and has previously attempted to commit suicide.  *Id.* at PageID 92-93.

## C.    Medical Source Opinions[3]

### 1.    Plaintiff's Treating Doctors

Plaintiff relies on the opinions of Tyrone Payne, Ph.D.; Mark E. Blair M.D.; and Jamie McLean, M.D. as evidence of her disability.

#### a.    Tyrone Payne, Ph.D. -- Psychologist

Psychologist Tyron Payne, Ph.D. examined Plaintiff on September 18, 2003. Doc. 8-7 at PageID 426-30. At this examination, Plaintiff informed Dr. Payne that she was suffering from headaches, pain in her cervical area, and poor mental health. *Id.*  She also informed Dr. Payne that she cannot comprehend anything, and that she flunked her courses due to her accident.  *Id.*

Dr. Payne conducted the Minnesota Multiphasic Personality Inventory-II ("MMPI-II") test on Plaintiff (via audio tape due to her low reading abilities).  *Id.* at PageID 427.  Based on the results, Dr. Payne opined that Plaintiff's scores suggest a person who is psychologically naïve and presents herself in an improbably favorable light.  *Id.*  Further, Dr. Payne stated, "Because of her intellectual level, [Plaintiff's] results should be interpreted with caution." *Id.*

Dr. Payne noted that Plaintiff's scores on the Wechsler Adult Intelligence Scale-Third Edition ("WAISS-III") placed her in the mildly impaired range.  *Id.* at PageID 429.  He further determined Plaintiff had a second grade reading comprehension level and a third grade level for

---

[3] The record contains additional medical records; however, only those relevant to Plaintiff's asserted errors are summarized herein.

spelling and arithmetic abilities. *Id.* at PageID 428-29. He reported her memory score was in the "borderline range." *Id.* Dr. Payne also reported that Plaintiff scored in the second percentile on a judgment and comprehension test. *Id.*

Dr. Payne diagnosed Plaintiff with acute stress disorder; mild mental retardation; and non-functional basic achievement skills with a GAF of 55.[4] *Id.* at PageID 429.

### b.     Mark Blair, M.D. -- Psychiatrist

Psychiatrist Mark Blair, M.D. treated Plaintiff from June 2006 through June 2007. *See* doc. 8-7 at PageID 338-57. On June 6, 2006, Dr. Blair completed a "Mental Functional Capacity Assessment" with respect to Plaintiff in which he rated her abilities in twenty categories. Doc. 8-7 at PageID 415-16. Dr. Blair reported that Plaintiff was "extremely limited" in fourteen categories including "the ability to understand and remember detailed instructions" and "the ability to make simple work-related decisions"; and "markedly limited" in four categories including "the ability to remember locations and work-like procedures" and "the ability to carry out very short and simple instructions." *Id.* at PageID 415.

At that time, Dr. Blair also noted that Plaintiff had physical limitations, including restlessness, difficulty lifting "anything as heavy as a 2 liter," and numbness in her legs. *Id.* at PageID 416. Dr. Blair further noted that Plaintiff had a poor memory. *Id.* At this visit, Dr. Blair assigned Plaintiff a GAF score of 59. *Id.* at PageID 339-57. Dr. Blair concluded that Plaintiff was unemployable, and that her limitations were expected to last twelve months or more. *Id.*

---

[4] "GAF," Global Assessment Functioning, is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Comm'r of Soc. Sec.,* 61 F. App'x 191, 194 n.2 (6th Cir. 2003); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision ("DSM-IV-TR") at 32-34. A GAF of 51-60 indicates "moderate symptoms … or moderate difficulty in social, occupational, or school functioning (*e.g.,* few friends, conflicts with co-workers"). *Id.*

On April 25, 2007, Dr. Blair completed a second Mental Functional Capacity Assessment with respect to Plaintiff. *Id.* at PageID 417-18. He found Plaintiff was "extremely limited" on the following eight categories:

1. The ability to remember locations and work-like procedures;
2. The ability to understand and remember detail instructions;
3. The ability to carry out detailed instructions;
4. The ability to maintain attention and concentration for extended periods;
5. The ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances;
6. The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of real periods;
7. The ability to travel in unfamiliar places or use public transportation; and
8. The ability to set realistic goals or make plans independently of others.

*Id.* at PageID 417.

In addition, Dr. Blair found Plaintiff was "markedly limited" in the following twelve categories:

1. The ability to understand and remember very short and simple instructions;
2. The ability to carry out very short and simple instructions;
3. The ability to sustain an ordinary routine without special supervision;
4. The ability to work in coordination with or proximity to others without being distracted by them;
5. The ability to make simple work-related decisions;
6. The ability to interact appropriately with the general public;
7. The ability to ask simple questions or request assistance;
8. The ability to accept instructions and respond appropriately to criticism from supervisors;
9. The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes;
10. The ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness;
11. The ability to respond appropriately to changes in the work setting; and
12. The ability to be aware of normal hazards and take appropriate precautions.

*Id.*

Based on his observations, Dr. Blair opined that Plaintiff was unemployable and her limitations would last twelve months or more. *Id.* at PageID 418.

### c.       Jamie McLean, M.D. -- Psychiatrist

Psychiatrist Jamie McLean, M.D. treated Plaintiff from July through November 2007. *See* doc. 8-7 at PageID 333-37.   On November 6, 2007, Dr. McLean completed a Mental Functional Capacity Assessment form. *Id.* at PageID 401-02.   Like Dr. Blair, Dr. McLean found Plaintiff had "marked" and "extreme" work-related mental limitations in all twenty of the above-listed areas, with the exception of her ability to ask simple questions or request assistance -- for which he rated Plaintiff as "moderately limited." *Id.* at PageID 401.   Additionally, Dr. McLean noted that Plaintiff suffers from major depressive disorder, post traumatic stress disorder and anxiety disorder not other specified (NOS). *Id.* at PageID 402.   Dr. McLean stated that Plaintiff "has difficulty with simple social interaction as a result of not being able to comprehend simple language . . . [a]lso she is unable to interact socially and occupationally because she has tremendous anxiety and low mood." *Id.*   Dr. McLean opined that Plaintiff was unemployable and her limitations would last twelve months or more. *Id.*

### 2.       Consultative Medical Sources

### a.       Giovanni Bonds, Ph.D. - Psychologist

Psychologist Giovanni Bonds, Ph.D. examined Plaintiff on December 5, 2006 upon the referral of the Bureau of Disability Determination.    Doc. 8-7 at PageID 303-13.   Dr. Bonds administered the WAIS-III, and Plaintiff obtained a Verbal IQ score of 62, a Performance IQ Score of 68, and Full Scale IQ of 62 – all scores falling in the "extremely low range" of intellectual functioning. *Id.* at PageID 307.   Moreover, Dr. Bonds determined that Plaintiff had a

"working memory" score of 55, which falls in the "extremely low" range of memory functioning. *Id.* at PageID 308.

In his report, Dr. Bonds noted that Plaintiff was previously administered the WAIS-III in his office on February 5, 2004, and received similar scores: a Verbal IQ score of 64; a Performance IQ score of 69; and a Full Scale IQ score of 63.[5] *Id.* at PageID 307.

Dr. Bonds diagnosed Plaintiff with borderline intellectual functioning; major depressive disorder (severe without psychotic features); panic disorder with agoraphobia; and assigned her a GAF of 45.[6] *Id.* at PageID 309.

Despite these severe mental limitations, Dr. Bonds nevertheless noted that Plaintiff was only "moderately limited" in her ability to do the following: relate to peers, supervisors or the public; understand, remember and follow instructions; maintain attention, concentration, persistence and pace to perform simple repetitive tasks; and withstand the stress and pressure associated with day-to-day work activities. *Id.* at PageID 309-10. He also noted that although she scored "very low" on arithmetic and judgment, and had never had her own bank account or paid bills, she nonetheless "has sufficient mental ability to manage her funds." *Id.* at PageID 307, 310.

### b. Tonnie Hoyle Ph.D. -- Psychologist

On February 14, 2006, Tonnie Hoyle, Ph.D., a state agency psychologist, reviewed Plaintiff's medical records and completed a Psychiatric Review Technique form. Doc. 8-7 at

---

[5] Thus, the results of both WAIS-III tests placed Plaintiff in the 60 -70 range as required to meet Listing 12.05(C).
[6] A GAF score of 41-50 indicates "severe symptoms … or serious impairment in social, occupational, or school functioning (*e.g.,* no friends, unable to keep a job)" DSM-IV-TR at 32-34.

PageID 271-84.  Dr. Hoyle opined that Plaintiff had only mild functional limitations.[7]   *Id.* at PageID 281.

### c.      Carl Tishler, Ph.D. -- Psychologist

On December 12, 2006, Carl Tishler, Ph.D., a state consulting psychologist, examined Plaintiff and completed a Medical Residual Functional Capacity (RFC) Assessment form.  Doc. 8-7 at PageID 314-16.   He determined that Plaintiff was "markedly limited" in only two categories --  her ability to understand and remember detailed instructions; and her ability to carry out detailed instructions -- and "moderately limited" in nine categories.  *Id.*

Dr. Tishler noted that Plaintiff would have difficulty working around people, tolerating the stress of day-to-day work, and handling work demands for speed, accuracy and productivity. *Id.* at PageID 316.   Nonetheless, he concluded that Plaintiff was capable of working with "minimal interaction."  *Id.*

Dr. Tishler also completed a Psychiatric Review Technique Form on December 12, 2006. *Id.* at PageID 318-31.  He opined that Plaintiff's functional limitations were moderate.  *Id.* at PageID 328.

## II.  APPLICABLE LAW

### A.      Standard of Review

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742,745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

---

[7] It is important to note, however, that Dr. Hoyle's review of Plaintiff's medical records occurred before Dr. Bonds examined Plaintiff and found her IQ scores in the "extremely low" range and diagnosed her with borderline intellectual functioning disorder.  *See id.* at PageID 275.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Thus, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

B.      **"Disability" Defined**

To be eligible for DIB or SSI, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. §§ 423 (a) & (d), 1382c(a). The definition of the term "disability" is the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.* A DIB or SSI claimant bears the ultimate burden of establishing that he or she is disabled under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Although a dispositive finding at any step ends the ALJ's review, *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1.    Has the claimant engaged in substantial gainful activity?

2.    Does the claimant suffer from one or more severe impairments?

3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4.    Considering the claimant's residual functional capacity ("RFC"), can he or she perform his or her past relevant work?

5.    Considering the claimant's age, education, past work experience, and RFC, can he or she perform other work available in the national economy?

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

### C.    Mental Impairments

A mental impairment may constitute a disability within the meaning of the Act. *See* 42 U.S.C. § 423 (d)(1)(A). The five-step sequential evaluation outlined above applies to the evaluation of mental impairments. However, the regulations provide a special procedure for evaluating the severity of a mental impairment at steps two and three for an adult. 20 C.F.R. § 404.1520a.

At step two, the ALJ must evaluate the claimant's "symptoms, signs, and laboratory findings" to determine whether the claimant has a "medically determinable mental impairment[]." *Rabbers*, 582 F.3d at 652-53. If so, the ALJ "must then rate the degree of functional limitation resulting from the impairment(s)" in four areas, commonly known as the "B criteria": (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or

pace; and (4) episodes of decompensation. *Id.* at 653. The degree of limitation in the first three functional areas is rated on a five-point scale: none, mild, moderate, marked, and extreme. *Id.* The fourth functional limitation is rated on a four-point scale: none, one or two, three, and four or more. *Id.*

At step three of the sequential evaluation, the ALJ must determine whether the claimant's impairment "meets or is equivalent in severity to a listed mental disorder." *Id.* at 653-54. A claimant whose impairments meet the requirements of the Listings of Impairments, located at Appendix 1 to Subpart P of the regulations, will be deemed conclusively disabled. *Id.* If the ALJ determines that the claimant has a severe mental impairment that neither meets nor medically equals a listed impairment, the ALJ will then assess the claimant's RFC and proceed to steps four and five of the sequential evaluation process. *Id.*

### III. OPINION AND ANALYSIS

#### A. The ALJ's Decision is Unsupported by Substantial Evidence

The Court agrees with Plaintiff's first assignment of error -- that the ALJ erred in finding Plaintiff does not meet Listing 12.05(C). Listing 12.05(C) provides:

> 12.05 Mental Retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . .

20 C.F.R., Pt. 404, Subpt. P, App.1, § 12.05(C).

Plaintiff must satisfy not only the Section C criteria, but also the diagnostic description in the introductory paragraph of Listing 12.05. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). Accordingly, to meet Listing 12.05(C) for mental retardation, Plaintiff must show: (1) she suffers from "significantly subaverage general intellectual functioning"; (2) she suffers from "deficits in adaptive functioning"[8]; (3) such deficits initially manifested before she turned 22 years old; and (4) she meets the criteria in section C. *See Daniels v. Comm'r of Soc. Sec.*, 70 F. App'x 868, 872 (6th Cir. 2003).

Instead of specifically discussing each of these requirements, the ALJ summarily stated that Plaintiff did not meet the Listing, and selectively recited facts that, in his opinion, undermined such a finding:

> [T]he evidence fails to support a finding that the claimant suffers from mental retardation with significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period before age 22. The claimant is a high school graduate. She has a driver's license and drives. She recalls taking a written driver's test. She has cared for her granddaughter most of her life. She is interested in computer games such as solitaire and yahtzee and indicated that she spends time on the computer playing games. She reportedly attended Sinclair Community College in 2003. At Dr. Bonds' evaluation, she could state her name, age, birthdate and Social Security number. She can count money without problems. During testing, she maintained satisfactory attention and concentration and put forth a good effort. Her IQ scores were consistent with those obtained in 2004. She was able to understand and follow directions during the testing. Dr. Bonds found that she would have sufficient mental ability to manage her funds. All these circumstances are not consistent with mild mental retardation as envisioned in 12.05. They are, however, consistent with Dr. Bonds' diagnosis of borderline intellectual functioning. As such, 12.05(C) is not met or equaled.

Doc. 8-2 at PageID 64-65.

If the above analysis was a complete and accurate review of the record, it may suffice. That is not the case, however, because the ALJ omitted crucial information. First, Plaintiff

---

[8] "Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills." *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 698 (6th Cir. 2007).

completed the twelfth grade, but notably, she was in the special education program. *See* doc. 8-6 at PageID 237-50. Second, Plaintiff testified that she had to have special accommodations to complete her driver's examination, *i.e.,* the written test was read to her. *See* doc. 8-2 at PageID 84. Third, Plaintiff testified that she only drives when she absolutely has to, which she estimated was once every few months. *See id.* at PageID 82-83. Fourth, the record indicates that Plaintiff was suspended from Sinclair Community College because she could not pass developmental education courses.[9] *See* doc. 8-7 at PageID 304. Fifth, Plaintiff reported that her interaction with her granddaughter and others is very limited. *See* doc. 8-2 at PageID 90, 105. Plaintiff advises that she wakes her granddaughter up in the morning and makes sure that she starts her online home schooling program. *See* doc. 8-7 at PageID 307-08. Her husband does the shopping and household chores. *See id.* Finally, the ALJ failed to mention Plaintiff's school records showing that her mental deficits have been present since she was a child. *See* doc. 8-6 at PageID 237-50.

The ALJ concludes that, because Plaintiff has some independence and is able to complete some daily activities, she cannot meet the Listing for mental retardation. However, in light of the Sixth Circuit's opinion in *Brown v. Sec'y of Health and Human Servs.*, 948 F.2d 268 (6th Cir. 1991), such a conclusion is erroneous, and unsupported by substantial evidence. In *Brown*, the claimant, who had an IQ score of 68, engaged in activities similar to the activities cited by the ALJ in this case: the *Brown* claimant used public transit, had a driver's license, visited friends, went grocery shopping, performed laundry and cleaning, did limited reading, and recorded his mileage and hours as a truck driver. *Id.* at 270. The Sixth Circuit held that the claimant was not

---

[9] It appears, however, that Plaintiff may have attended classes at Sinclair Community College again in 2005-2006. *See* doc. 8-7 at PageID 286. Plaintiff's academic record at Sinclair Community College is unclear, and the ALJ did not inquire into this subject at the administrative hearing. *See* doc. 8-2 at PageID 80-108.

precluded from meeting Listing 12.05(C) simply because he had these limited functional abilities. *Id.*

Likewise, the Court finds here that the ALJ's opinion is unsupported by substantial evidence because he ignored material facts contained in the record while presenting only those that supported his apparent conclusion that Plaintiff is not disabled. *See Swartz v. Barnhart*, 188 F. App'x 361, 370-71 (6th Cir. 2006) (finding an ALJ's decision unsupported by substantial evidence because the ALJ ignored evidence in the record that supported a contrary finding); *Hurst v. Sec. of Health & Human Servs.*, 753 F.2d 517, 519-20 (6th Cir. 1985) ("[F]ailure to consider the record as a whole undermines the Secretary's conclusion"); *Hopkins v. Comm'r of Soc. Sec.*, No. 1:07-cv-964, 2009 U.S. Dist. LEXIS 101522, at *40 (S.D. Ohio May 14, 2009) (same).

**B.      Plaintiff Meets Listing 12.05(C)**

Contrary to the ALJ's decision, the Court finds that Plaintiff has demonstrated that she meets or equals Listing 12.05(C).  The objective evidence in the record consistently demonstrates that Plaintiff satisfies the Section C criteria.  First, the record contains three valid IQ scores between 60 and 70.  Doc. 8-7 at PageID 307.  Second, Plaintiff has other "physical or other mental impairment[s] imposing an additional and significant work-related limitation of function."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C).  The ALJ found that Plaintiff had the following severe impairments: headaches; stress disorder (anxiety); borderline intellectual functioning; and a history of depression.  *See* doc. 8-2 at PageID 61.  Due to these severe impairments, the ALJ placed significant restrictions on the work Plaintiff is able to perform including:  (1) no exposure to the general public; (2) no complex or detailed instructions; (3) only low stress jobs with no production quotas and no over-the-shoulder supervision; (4) only

simple one- or two-step tasks requiring little, if any, concentration; (5) no teamwork; and (6) no reading. *Id.* at PageID 65. Therefore, considering the limitations in Plaintiff's RFC -- limitations found by the ALJ -- the Court finds that Plaintiff meets the second part of Section C, *i.e.,* she has other impairments (anxiety and depression) that impose additional and significant work-related limitations beyond and in addition to her mental retardation. *See Mowery v. Heckler*, 771 F.2d 966, 971-72 (6th Cir. 1985).

Plaintiff has also demonstrated that she had "significantly subaverage general intellectual functioning with deficits in adaptive functioning" prior to the age of 22, as required by Listing 12.05. The record establishes that Plaintiff has been intellectually challenged and had deficits in adaptive functioning since at least elementary school. Plaintiff's report cards from elementary school and high school, for example, state that she was in the special education program. *See* doc. 8-6 at PageID 237-50. Additionally, Plaintiff received IQ scores of 62, 65, and 69 on the Wechsler Intelligence Scale for Children when she was thirteen years old. *Id.* at PageID 247.

Further, more recent tests conducted by Dr. Payne reveal that Plaintiff has a second or third grade level for reading comprehension, spelling, and arithmetic; her memory quotient is in the "borderline" range; and she performed at just the second percentile on a judgment and comprehension test. Doc. 8-7 at PageID 428-29. Likewise, Dr. Bonds found Plaintiff's IQ to fall in the "extremely low" range, and also noted that Plaintiff's "working memory score" was in the "extremely low range of memory functioning." *Id.* at PageID 307-08.

Moreover, Plaintiff has demonstrated that she has deficits in adaptive functioning (social skills, communication, and daily living skills). Plaintiff testified that she spends the majority of her time in her bedroom because she is anxious around people, and her husband does the household chores, such as grocery shopping, cooking and cleaning. *See* doc. 8-2 at PageID 90-

91, 101-02. Likewise, she testified that she does not have friends. Nor does she have any hobbies. *See id.* at PageID 103.

It is further evident that Plaintiff has had such difficulties in adaptive functioning since childhood. Plaintiff reported to the state consulting psychologist, Dr. Bonds, that she did not have friends as a child or a teenager. Doc. 8-7 at PageID 304. Her school records indicate that she was not involved in any activities in high school. *See* doc. 8-6 at PageID 237; *see also* doc. 8-7 at PageID 304. Her fifth grade teacher noted that she was having difficulty adjusting in the classroom. *See id.* at PageID 242.

In *Yates v Astrue,* No. 3:05-cv-546, 2009 U.S. Dist. LEXIS 76141 (M.D. Tenn. Aug. 10, 2009), the district court determined that a similarly situated Social Security disability claimant satisfied Listing 12.05(C). In *Yates*, the claimant had an adult verbal IQ score of 70. *Id.* at *30-31. The claimant testified that he lived independently, and performed household chores such as doing laundry, washing dishes, grocery shopping, and mowing the lawn (for short periods of time). *Id.* at *32-33. Additionally, the claimant regularly attended church and spent time with his girlfriend. *Id.* The Court rejected the ALJ's conclusion -- that the claimant did not meet the Listing simply because he had these functional abilities. *Id.* at *33-34. Further, though the claimant did not present his IQ score before the age of 22, the Court found that his school records -- *i.e.,* showing that he had failed fifth grade twice and graduated high school with a special education diploma -- demonstrated that his mental deficits manifested before turning 22. *Id.* at *29-30. Under these circumstances, the district court reversed the ALJ's decision and remanded the case for an award of benefits, finding that the claimant had met Listing 12.05(C) for mental retardation. *Id.* at *37-38. The Court finds that the same analysis should be applied in this case. In conclusion, Plaintiff has demonstrated that she meets Listing 12.05(C), thereby

rendering her "disabled" as defined by the Social Security Act. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05(C).

In light of this finding, it is not necessary to address Plaintiff's remaining alleged errors. *See* doc. 9 at PageID 446-51. If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Thus, because Plaintiff meets a Listing, the evaluation stops at step three. *See Mowery*, 771 F. 2d at 973.

### C. An Award of Benefits is Warranted

When, as here, the non-disability determination is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits be granted. The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan,* 501 U.S. 89, 100 (1991).

Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.,* 17 F. 3d 171, 176 (6th Cir 1994). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *See Mowery*, 771 F.2d at 973; *Lowery v. Comm'r of Soc. Sec.*, No. 3:10-cv-427, 2011 U.S. Dist. LEXIS 154323, at *31-32 (S.D. Ohio Dec. 8, 2011) (Newman, M.J.), *adopted by* 2012 U.S. Dist. LEXIS 40333 (S.D. Ohio Mar. 23, 2012) (Rice, J.); *Valentine v. Astrue*, No. 3:10-cv-470, 2011 U.S. Dist. LEXIS 154178, at *29-30 (S.D.

Ohio Dec. 7, 2011) (Newman, M.J.), *adopted by* 2012 U.S. Dist. LEXIS 36736 (S.D. Ohio Mar. 19, 2012) (Rice, J.). Such is the case here.

The proof of disability here is great and remand will serve no purpose other than delay. All substantial factual issues have been resolved and the record reflects that Plaintiff is disabled, and has been disabled since October 3, 2003. The evidence in the record clearly demonstrates that Plaintiff meets Listing 12.05(C) and is "disabled" as defined by the Act. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05(C).

## IV. RECOMMENDATION

Based on the above analysis, Plaintiff's assignment of error is well-taken. The Court finds the ALJ's decision is unsupported by substantial evidence, and recommends that it be reversed. The Court also recommends this case be remanded for an immediate award of benefits as the record overwhelmingly establishes Plaintiff's entitlement to DIB and/or SSI benefits as of October 3, 2003.

**IT IS THEREFORE RECOMMENDED THAT:**

1.  The Commissioner's non-disability finding be found **UNSUPPORTED BY SUBSTANTIAL EVIDENCE**, and **REVERSED**;

2.  This case be **REMANDED FOR AN IMMEDIATE AWARD OF DIB AND/OR SSI BENEFITS WITH AN ONSET DATE OF OCTOBER 3, 2003**; and

3.  This case be **CLOSED**.


August 3, 2012                          **s/ Michael J. Newman**
                                        United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).